UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-614-H

HALICY ROBERT WHEATLEY,
Individually and as the Administrator of the
ESTATE OF ALICE M. WHEATLEY, deceased            PLAINTIFF

V.

METROPOLITAN LIFE INSURANCE COMPANY,
VERIZON COMMUNICATIONS [SIC],
ANTHONY B. DOUGLAS, and
CARL NORRIS            DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Halicy R. Wheatley was the husband of Alice M. Wheatley at the time of her death. He alleges that Metropolitan Life Insurance Company ("MetLife") and Verizon Communications ("Verizon")[1] violated various duties under ERISA, when they paid the proceeds of his wife's life insurance policy to Anthony Douglas and Carl Norris. Wheatley says that he was entitled to the proceeds. MetLife and Mr. Wheatley have both moved for summary judgment and the issues have been adequately briefed by all sides.

Many of the circumstances surrounding the handling of this claim are quite unusual.[2] MetLife paid certain life insurance benefits to Anthony Douglas and Carl Norris because its file

---

[1] Ms. Wheatley was originally employed by GTE, which became Verizon. The Court will refer to this corporate entity as "Verizon" throughout this Memorandum.

[2] To begin, it is not clear that MetLife ever considered Plaintiff's claim within the context of its administrative process, even though it should have been obvious that Plaintiff maintained such a claim. This, in turn, led to the circumstance that MetLife apparently paid the benefits to Douglas and Norris before Plaintiff had an opportunity to appeal or contest the decision. Thus, should Plaintiff succeed here, the potential exists for a double recovery against MetLife.

contained a beneficiary designation form naming them. MetLife believed the form to be controlling based upon ERISA law. Upon a review of the MetLife insurance provisions as well as Verizon's ERISA and employment records, the Court concludes that the beneficiary designation form did not apply to the policy at issue. Instead, MetLife should have determined the beneficiary by consulting the default beneficiary designation provisions of the policy. The question for this Court to answer is whether MetLife can offer a reasoned explanation, based upon evidence, for its mistake.

I.

As part of its employee benefits plan, Verizon offered life insurance benefits through two separate plans. Its employees could purchase either one or both (1) the Basic Life and Accidental Death and Disability Plan ("Basic Life Plan") and (2) the Group Universal Life Plan ("GUL Plan"). MetLife insures both Plans. Only the handling of the proceeds of the Basic Life Plan are at issue here, though it is important to understand the operation of both plans. The two plans have an important distinguishing feature: the Basic Life Plan "ends on the last day of your employment," while an employee may continue the GUL coverage by continuing to pay premiums directly.

In the Basic Life Plan, Verizon automatically purchases a minimum of $10,000 in life insurance benefits for each of its employees. Employees can purchase additional life insurance at either one or two times their annual pay. Employees who do so also automatically receive an equal amount of Accidental Death and Disability ("AD&D") coverage. MetLife administers this plan, decides what benefits are to be paid and to whom the benefits are paid. The Basic Life Plan had a default provision, which states that if a participant failed to make a specific

beneficiary designation, the benefits would flow to a list of persons specified in the policy, starting with the participant's spouse.

Ms. Wheatley started work at GTE on August 1, 1979. It appears that at that time, Ms. Wheatley was married to Anthony Douglas. She automatically received the Basic Life Plan policy and purchased additional insurance as allowed under the Basic Life Plan. The record is not clear whether Ms. Wheatley made a beneficiary designation at that time. However, on October 25, 1994, Ms. Wheatley did specify beneficiaries under the Basic Life Plan, naming her husband and her son, Carl D. Norris, Jr. In 1995, Ms. Wheatley and Mr. Douglas dissolved their marriage. On June 20, 1995, GTE terminated Ms. Wheatley's employment as part of a reduction in force. All of Ms. Wheatley's Basic Life Plan policies ended automatically on the last day of her employment.

The GUL Plan is separate from the Basic Life Plan. The GUL Plan allows an employee to elect up to five times his or her annual salary. Seabury & Smith, Inc. administers the GUL Plan, which MetLife also insures. Ms. Wheatley enrolled in the GUL Plan in 1987. On November 4, 1992, Ms. Wheatley revised her GUL Plan enrollment to name Douglas and Norris as beneficiaries. Upon her termination in June 1995, Plaintiff chose to retain the GUL policy by maintaining the premium payments as Verizon's ERISA plan and the GUL Plan provided.

In April 2000, Ms. Wheatley married Halicy Wheatley. Less than a year later in March, 2001, Ms. Wheatley re-applied for a job with GTE's successor entity, Verizon. She was rehired effective April 1, 2001. Shortly thereafter, as a new employee, Ms. Wheatley completed enrollment paperwork for the Basic Life Plan and the GUL Plan. On the form that Verizon provided, Ms. Wheatley designated Plaintiff as the primary beneficiary under the GUL Plan.

The same form contained the necessary registration forms for the Basic Life Plan, which Ms. Wheatley also completed. However, the forms did not contain a place to designate beneficiaries under the Basic Life Plan. Verizon maintained separate forms to make such a designation.[3] Thus, the Plan records do not reflect that Ms. Wheatley made any specific beneficiary designation applicable to the Basic Life Plan in 2001.

On September 29, 2001, Ms. Wheatley died from injuries suffered as the result of a motorcycle accident. Rather quickly, on November 14, 2001, MetLife paid Plaintiff the full GUL Plan benefits, in accordance with the 2001beneficiary designation form. However, Plaintiff believed that he was entitled to the GUL accidental death benefit and that he was the named beneficiary under the Basic Life Plan. In fact, MetLife had only made a payment to Plaintiff under the GUL Plan. From a review of the record, it is evident that Plaintiff was confused about which benefits he had received. For over two years, Plaintiff, Verizon, MetLife and the Kentucky Department of Insurance traded letters trying to resolve the confusion.[4]

Eventually, MetLife made an independent determination that the beneficiary designation form dated October 25, 1994, applied in the present circumstances. That form designated Douglas and Norris as 50/50 beneficiaries of the Basic Life Plan benefits. MetLife says that it received communication from Verizon stating that Ms. Wheatley was continually employed by

---

[3] Plaintiff says that Ms. Wheatley apparently assumed that the GUL Plan designation form also applied to the Basic Life Plan. This is irrelevant to the resolution of this case.

[4] Much confusion arose. Plaintiff appears to have either confused the Basic Life Plan and the GUL Plan benefits or believed that he had already received Basic Life Plan benefits. He also assumed that Ms. Wheatley had elected accidental death benefits under both the policies. Actually, Ms. Wheatley had elected the accidental death benefits under the Basic Life Plan, but had not done so under the GUL Plan. It is unclear whether the decision not to elect these benefits under the GUL Plan was intentional or an oversight. Further confusion developed because Plaintiff assumed that the 2001 beneficiary designation applied to both policies. Plaintiff contacted Verizon on several occasions concerning his entitlement to the Basic Life Plan benefits. However, it is not clear that MetLife treated these inquiries as a formal claim or that Plaintiff made a formal claim.

4

Verizon from 1979 to September 2001. MetLife notified both Mr. Douglas and Mr. Norris about their status as beneficiaries. Both filed claims for the Basic Life Plan benefits. On September 14, 2004, MetLife paid both Norris and Douglas $28,000 in Basic Life Plan benefits ($14,000 in life insurance and $14,000 in AD&D benefits), plus interest.

On September 24, 2004, Plaintiff filed suit in Jefferson Circuit Court. Thereafter, Defendants removed to federal court. Plaintiff argues that Verizon and MetLife are liable to Plaintiff under ERISA for breach of their fiduciary duties and failing to properly administer the ERISA plan. Plaintiff argues that Norris and Douglas are liable under the state law theory of unjust enrichment.

## II.

The Court can easily dispose of Plaintiff's claims against Douglas, Norris and Verizon under the applicable ERISA provisions.

### A.

Plaintiff has no claim directly against Douglas and Norris. These two apparently made claims upon the Basic Life Plan insurance proceeds based upon the beneficiary designations that Ms. Wheatley filed in 1994. The ERISA plan fiduciaries made the decision that Douglas and Norris were the proper beneficiaries. The Court cannot conceive of any evidence which could suggest any other conclusion than Douglas and Norris were making a permissible claim for benefits. They did nothing unlawful. They relied only upon designations made by Ms. Wheatley. Even if Verizon or MetLife acted improperly, these two individuals cannot be found legally responsible under any construction of the law and these facts.

### B.

The next question is whether Verizon can be held liable for its actions in this case. Plaintiff asserts in his Amended Complaint that Verizon is a "plan fiduciary under ERISA." He claims that Verizon's actions in this case constituted a breach of contract and a breach of Verizon's fiduciary duties. Common law breach of contract claims are preempted by ERISA and thus to the extent that Plaintiff alleges such a claim, that claim is therefore dismissed. *See Metropolitian Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987) (holding that ERISA preempts common law breach of contract claims).

Plaintiff can therefore seek relief only via ERISA, and thus can only seek relief against Verizon via the enforcement mechanisms of 29 U.S.C. § 1132(a). Plaintiff's theory of the case is not entirely clear, but he appears to be seeking relief via either or both sections 1132(a)(3) and 1132(a)(1)(B). The Court will consider each possibility in turn.

Section 1132(a)(3) allows a civil action to be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Plaintiff, as a possible beneficiary, seeks damages; he does not seek to enjoin any actions of Verizon. Therefore, his relief is limited to "other appropriate equitable relief." This case strongly resembles *Wilkins*. In *Wilkins*, the Sixth Circuit ruled that where a plaintiff/beneficiary could seek monetary relief under section 1132(a)(1)(B), "he does not have a right to a cause of action for breach of fiduciary duty pursuant to 1132(a)(3)." 150 F.3d at 615. Although the recovery of monies can, in some cases, be a form of equitable relief, the fact here is that Plaintiff is seeking compensatory damages from Verizon, not the disgorgement of improper

6

gains or any other form of traditional equitable relief. Therefore, Plaintiff has no claim for damages under section 1132(a)(3).

Section 1132(a)(1)(B) allows a civil suit to be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan . . . ." Under ERISA law generally, the proper party defendant in an action concerning ERISA benefits is "the party that controls administration of the plan." *Garren v. John Hancock Mutual Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997). "Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988). Here, Verizon did not control the administration of the plan. It is true that one of Verizon's purported actions did possibly lead to the payment of the Basic Life Plan benefits to Mr. Norris and Mr. Douglas. That is, if Verizon informed MetLife that Ms. Wheatley had been continuously employed by Verizon (and its predecessor) from 1979 to 2001, that communication probably influenced MetLife's decision to give effect to the 1994 beneficiary designation form (as opposed to resorting to the plan's default provisions when a participant failed to select a beneficiary). However, that action, standing alone, does not constitute "administration" of the plan as required by Sixth Circuit precedent.

Therefore, the Court will grant summary judgment in favor of Verizon because Plaintiff cannot, as a matter of law, maintain his claim against Verizon.

III.

Plaintiff's only one remaining claim is his appeal of MetLife's decision to deny benefits under the Verizon ERISA plan. On such an appeal, this Court reviews MetLife's decision under

the arbitrary and capricious standard. *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003). When a Court applies the arbitrary and capricious standard of review to a denial of ERISA benefits, it must decide whether the plan administrator's decision was rational in light of the plan's provisions. *Williams v. International Paper*, 227 F.3d 706, 712 (6th Cir. 2000) (citing *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989).

Under the terms of the Basic Life Plan, when Verizon terminated Ms. Wheatley in 1995, her Basic Life Plan terminated at the same time. No provision of Verizon's ERISA plan or any employment contract either cited to this Court or found by it provides otherwise. When Ms. Wheatley joined Verizon in 2001, she attained the right to enroll in a new Basic Life Plan. She elected to do so. Under these circumstances, the beneficiary designation for the prior Basic Life policy terminated six years earlier could not possibly apply to the new Basic Life policy. Verizon's ERISA plan has very straightforward rules for default beneficiary designations in these circumstances. Those default rules appoint Plaintiff as sole beneficiary of the new Basic Life Plan.

When this dispute arose, however, MetLife's file contained only the old 1994 Basic Life Plan beneficiary designation form. More important, MetLife says that it received information from Verizon that Ms. Wheatley had been continually employed there from 1979 to her death. This was quite important information. Based upon it, MetLife determined that the old beneficiary designation form did apply to Ms. Wheatley's current Basic Life Plan. The Sixth

Circuit has been clear that applicable beneficiary designation forms must be obeyed in ERISA cases, regardless of any other expression of intent. *See, e.g., Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676-77 (6th Cir. 2000) (holding that, in a situation where an ex-spouse had waived the right to receive benefits from the plan participant, "the beneficiary card controls to whom the plan administrator must pay"). Thus, MetLife's decision to award the Basic Life Plan benefits to Douglas and Norris rests on its belief that the 1994 beneficiary designation form applied because Ms. Wheatley had been an uninterrupted employee of Verizon's between 1994 and her death in 2001.

Under ERISA law, when the administrator can offer a reasoned explanation, based on the *evidence*, for a particular decision, that outcome is not arbitrary or capricious, *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citing *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)). Presumably, this rule would apply even where the decision itself is later shown to be incorrect. With this in mind, at a conference on March 25, 2007, the Court asked Defendants MetLife and Verizon to further comb their records for any documents–the evidence–concerning the central inquiry: whether, when, and how MetLife determined Ms. Wheatley's employment status with Verizon. Neither party has been able to produce any additional documents. Therefore, only one document in the voluminous administrative record speaks even obliquely to this key point: a letter from MetLife to the Kentucky Department of Insurance, stating that Verizon had informed MetLife that there was no break in Ms. Wheatley's employment with Verizon. While Court acknowledges MetLife's argument that this statement is entitled to some weight, it does not provide an actual evidentiary basis for MetLife's decision. Rather, it merely documents that decision.

9

Here, MetLife has undoubtedly offered an explanation for why the benefits were awarded to Douglas and Norris. However, MetLife also has the burden of showing more than a reason; it must have a reason based on some *evidence* to support its determination that Ms. Wheatley was continuously employed at Verizon between 1994 and 2001. MetLife has produced no document that shows how it reached this conclusion: no record of a phone call with the Verizon personnel office, no memo from the Verizon personnel office, and no affidavit of a MetLife employee who made a phone call to Verizon. Without a shred of direct evidence showing how (or possibly even whether) Verizon and MetLife communicated on this issue, the Court has no basis for concluding that MetLife's decision was a reasonable one. Rather, the absence of such evidence requires this Court to conclude that MetLife's determination that Ms. Wheatley was continually employed by Verizon between 1994 and 2001, in addition to being absolutely incorrect, was not supported by any evidence in MetLife's possession. The incorrect determination was, therefore, by definition, arbitrary and capricious.

The Court will grant Plaintiff's motion for summary judgment as to its claims against MetLife, and order MetLife to award the appropriate Basic Life Plan benefits to Halicy Wheatley. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is SUSTAINED as to his claim against Defendant MetLife and that therefore MetLife is ordered to award the appropriate benefits to Plaintiff.

IT IS FURTHER ORDERED that the remainder of Plaintiff's motion for summary judgment is DENIED and that Defendant MetLife's motion for summary judgment is DENIED.

This is a final order.

10

cc: Counsel of Record